Your case of the morning is 119-365 John Fattah v. Muric Bim et al. Are you ready to proceed? Yes, Your Honor. Police counsel ready? You may proceed. Good morning. May it please the Court. My name is Sean Dorian. I represent Mr. and Mrs. Bim in this matter of the appellant. Before I begin, I'd like to wish the Court a happy St. Patrick's Day and thank you for the opportunity to discuss the case with you today. My clients unfortunately could not make the trip, but they asked me to express their gratitude as they did not previously have a chance to discuss this matter with an appellate court. In addition, I'd like to also welcome the two young men here that are in the Boy Scouts. I'm an Eagle Scout myself, so I hope they view this as a valuable experience. I'm here today to ask you to reverse or vacate the appellate court's ruling and affirm the trial court's ruling or verdict in this case, and there are three reasons why. The first reason is that Mr. Fattah, the plaintiff below, never proved a claim against my clients individually at trial. The second reason is because of the due process issues that arose in the appellate court that denied my clients the opportunity to address Mr. Fattah's arguments before the appellate court, and so there's a procedural reason there. And then the third reason is more substantive, and it's because the appellate court's new rule on this implied warranty of habitability waiver is simply not correct or workable in this state, and it's an issue of great importance as demonstrated by the number of amicus parties that filed briefs that are before you. And so with that, I'll just point out that the facts of this case are relatively simple. My clients are a married couple that owned a construction company that built a house. It built this house in Glenview in 2007, and it sold it to a woman named Miss Beth Lubeck. In making her purchase, Miss Lubeck waived the implied warranty of habitability in accordance with this court's rulings in the Peterson case and the Wilmette Partners case. There is no question in this case that Miss Lubeck's waiver and MasterClad's disclaimer was effective to waive that implied warranty of habitability. In exchange for that waiver, Miss Lubeck received an express written warranty by MasterClad under which it performed during the warranty period. In 2010, a little over three years after Miss Lubeck purchased the house, she sold it to Mr. Fattah in a transaction that included a document reflecting that Mr. Fattah purchased the house as is. Four months after he purchased the house, a stone patio on the rear of the house crumbled and collapsed. And then five months later, Mr. Fattah filed a one-count complaint against the BIMS individually for breach of the implied warranty habitability. Now, my clients were briefly represented solely for the purpose of filing a motion for summary judgment, and then that attorney withdrew. They filed a substitute appearance pro se, providing their updated address for service. The case went to trial, where Mr. BIMS represented him and his wife. His wife did not appear and testify, but represented himself pro se and prevailed. The trial court issued a memorandum order, specifically finding that the waiver that Miss Lubeck had signed was valid, effective, and binding on Mr. Fattah, the subsequent purchaser of the house. The court, also important for today's discussion, made some factual findings. It made factual findings that MasterClad was the builder. MasterClad sold the house. The court did not address in its memorandum order the fact that my clients were sued individually rather than their construction company. However, that, as I'll be discussing, is an additional basis for affirming the trial court's verdict. Mr. Fattah decided to appeal the case. He timely filed his notice of appeal, but that's where the problem began. There were many documents filed in the appellate court that were not timely filed. They did not include the BIMS address for service. They were not properly served on the BIMS. Ultimately, this led to what is rather troubling, that Mr. Fattah's appellate's brief was not sent to the proper address. My clients never received it. They never had an opportunity to address the arguments made therein. The court below did not have an oral argument, and the court issued a written opinion under Rule 23 that Mr. Fattah later asked to be published, and it was. My clients did not receive word of this opinion until after the period for re-hearing had expired, and that led us to petition for your review. So the first reason I'd like to discuss why the appellate court's ruling should be reversed is that Mr. Fattah simply never proved the claim against my clients individually at trial. There was no evidence offered that would allow anyone to pierce the corporate veil of mastercladding, which the trial court found was the entity that built the house and sold the house. The trial court made a number of factual findings in this case. Unfortunately, the appellate court changed those findings. It improperly conflated masterclad with the BIMS and ultimately used that as a basis for reversing the trial court's verdict in ruling against the BIMS. May I ask you about what happened in the trial court, how we got to this place? The case was originally captioned in the name of the BIMS individually, correct? Yes, it was. And there was no issue about that that was raised in the trial court, that they were personally liable? They were named individually. They responded to the complaint. And Mr. Fattah took the case to trial. At trial, Mr. BIM testified that what he did was in his capacity as the president of Masterclad, and away it went. No one addressed the fact that, well, perhaps these aren't even the right defendants. And as you're about to tell us, of course, they were not served, and so therefore this issue wasn't raised in the appellate court. So this is the first time this issue is being raised? Yes, Your Honor. Now I will point out that as plaintiff at trial, Mr. Fattah had the burden to prove all of the elements of his claim. That did not happen, and the record closed. The trial court, as I mentioned, issued its verdict on the implied warranty issue that we will get to shortly. So we think that for this reason alone, the court can enter a ruling in this case reversing the appellate court and affirming the trial court's verdict on other grounds than what the trial court ruled. The next reason is because of the due process problems that occurred in the appellate court. There's a procedural issue here. My clients never received numerous documents filed by Mr. Fattah before he filed his brief. There were all sorts of things that did not have their proper address on it, were not sent to them, and were not timely filed. Time and time again, the appellate court granted Mr. Fattah leave to file things in stanter, and I think that's where one of the major problems occur. Mr. Bim did receive in the mail a copy of Mr. Fattah's motion for additional time to file the record on appeal. This is the only document he received relating to the appeal. And when he received that document, Mr. Bim did what I think we would expect any pro se litigant to do. He assumed the court granted it, and then at the end of the additional time requested, he called the court and asked if anything had been filed, and he was told no. At that point, it was reasonable for Mr. Bim to assume, well, Mr. Fattah must have simply abandoned his appeal. I want it dropped. Mr. Bim then never received anything else in the appeal. But unbeknownst to him, Mr. Fattah passed the deadline he was granted to file the record on appeal. Thirty-four days later, filed a motion asking for leave to file the record in stanter, which was not served on Mr. Bim. And when I say not served, I don't mean Mr. Bim just didn't open his mail and didn't get it. I mean that the notice of filing specifically says it was sent to the wrong address. And what we're comparing here is the address provided by Bims in the circuit court in their pro se appearance with what is on the documents that were filed in the appellate court. They're two different addresses. So as a result, we then get to Mr. Fattah filing his appellant's brief. It, again, clearly states that a different address is where the brief was sent. The appellate court then moves forward and issues an opinion that ultimately became published. In the past, the appellate court has caught these types of problems before. We cited two cases for you in our briefing. One of them is as recent as 2013. And in those cases, the court found that, well, while we may have jurisdiction because you timely filed a notice of appeal, you have not followed the rules for service. And this has created some serious concerns. And the practical consequences require that when you violate the rules, we will dismiss your appeal. That's what the first district did in those two cases. It was a Wells Fargo case from 2013 and a Leyden Fire Protection case from 1975. So for that reason, we raise this to the court. It's an additional reason why the court should either reverse or vacate what the appellate court did below and reinstate the trial court's verdict. And then that brings me to the third reason why we're here before you today, and that's to discuss the implied warranty of habitability issue. Now, while I mentioned that the court can rule in our favor and reverse or vacate, we think that the court should still address the implied warranty issue because the appellate court's views on this issue are now known and are now out in the marketplace, and as you've seen from the presence of the amicus briefs, have created some concern from the market participants. The question created is whether these warranty waivers are in service. Well, we typically, if we ruled on your procedural issues, I mean, obviously the reason we took the case is what you indicated earlier and why there's so many amicus briefs is that it's an important issue and it's one that should be decided by this court, and I think you would probably agree, regardless of what happened below, that the issue is squarely before us today. Is that right? Yes, I would. Okay. And it's somewhat problematic to rule on a procedural issue and then give an advisory opinion after that if we said there was improper service or whatever and vacate an opinion based on that regard, but we can deal with that later. Let me ask you about the implied warranty of habitability. It seems that our case law would indicate, and I don't think you would deny that it's not only initial purchasers but subsequent purchasers, at least for a reasonable period of time, it would apply to subsequent purchasers as well. Would you agree with that proposition? I would agree that what the Roderowitz case did, which I think is what Your Honor is referring to, is it said, in that circumstance, and the court's language was very specific, in these circumstances is what it said, there you did not have a waiver by the initial purchaser. What you had was the builder selling to the initial purchaser, the warranty there existed, and then the initial purchaser, within I think it was about a year or a little over a year, sold the house to a subsequent purchaser. And what the court said there was that a simple subsequent sale should not arbitrarily eviscerate the warranty. The warranty survives, was the word that the court used, the transfer of ownership. Our case, I believe, is different in that the warranty never existed. It never attached to the house. It was never passed to Ms. Lubeck. And that's my question. That's the heart of my question. If implied warranties of habitability are not only for the initial purchaser but the, and we'll get to the waiver in a minute, the subsequent purchaser as well, is it really up to the initial purchaser to be able to waive the subsequent purchaser's implied warranty of habitability? I mean, that subsequent purchaser doesn't know that it was waived going in. Is it the responsibility of the subsequent purchaser who would have that right, even going with your argument, barring a waiver to research and say, hey, am I going to get my warranty of habitability here or did you waive it? Yes, Your Honor. I believe that when you're a subsequent purchaser of a house, at minimum you need to ask. There should be, there's some level of diligence that has to be required. We already have subsequent purchasers doing title searches, doing home inspections. Mr. Fattah did at least a home inspection in this case, which is one of the facts at issue. And so the concern is, well, if they – This wouldn't show on a title search, though, would it? It would not. But wasn't this sold as is? It was sold as is. What does that mean, though? Well, in this particular case, Mr. Fattah sold, what is mean is, we cited some language for you in our briefing, it means someone buys the property exactly as it is, quote, with all faults. And so what Mr. Fattah did was purchase this house. This is another reason why we think this particular case lends itself to one supporting, enforcing the waiver against the subsequent purchaser. When he bought the house, he signed a rider that said, I'm buying the house as is, and immediately above his signature it says that he was advised to seek the advice of counsel. Such a professional could have, knowing the law, simply asked, has the implied warranty been waived on this house? That would have been very easy for Mr. Fattah or anyone else, any attorney representing him, to discover. And the ease of that discovery is, I think, in stark contrast to one of the underlying public policy bases for creating the implied warranty liability in the first place. And that basis was, we understand it's very difficult for homebuyers to discover whether there's a latent defect in a house. That's a good policy. On the other hand, it's very easy for a subsequent purchaser to simply ask, has the warranty been waived? The answer will either be yes or no. Isn't the real question, though, why would you negotiate, what would be the point of negotiating for waivers if a subsequent sale revives the warranty? That is exactly one of the points we raised in our brief. Why would, the court has already ruled in the case. Don't you, I mean, you get something for waiving. Yes, Your Honor. You either get a lower price, for example, or you might get, as what occurred in this case, perhaps in addition to a lower price, an express written warranty in exchange. And if you look at the warranty language, the waiver language, that's at issue in this case, it's very specific. It specifically says that Ms. Lubeck waived the implied warranty in exchange for getting an express written warranty. And I think that that's something that we should encourage from all contracting parties. We want people to eliminate uncertainty and document certainty so that when issues arise, the court has something concrete that it can look to to determine the intent of the parties. Moving back to the as is purchase by Mr. Patak, I would submit that the appellate court got this part of the analysis wrong. What it did was it looked at Mr. Patak's as is document and said, well, does this document meet the requirements of Peterson and Wilmette Partners? Is it the actual agreement of parties? The parties in that analysis, it construed to be the BIMS or MasterCloud and Mr. Patak, which creates another problem that I'll come to in a minute. But what it did was it applied those factors. Is this the actual agreement of the parties? Does it talk about the implied warranty compatibility? Does it describe the consequences? And we think that's the wrong way to look at the as is document that Mr. Patak signed in purchasing this house. Instead, what it reflects is that it manifests his intent to buy the house as is, whether or not it has a warranty of implied warranty compatibility attached to it. Are you saying it's a sufficient waiver of the implied? It's a waiver as is? Is that sufficient? If we start right from the beginning, the builder sell into the first buyer and the contract said as is, would that be sufficient waiver? No, it would not. Is this a sufficient waiver? Yes, it is. Why? The reason is because the warranty had already been waived and Mr. Patak could have discovered very easily whether or not it had been waived. But the words themselves, the document, the as is document itself, you're not arguing that that in itself is a waiver? I'm not. Okay. I'm arguing that it reflects his intention to buy whether or not the warranty existed on the house, because in this instance it had been waived by Mr. Patak. At the end of the day, are we really being asked to determine as a policy a matter of whether the burden should be upon subsequent purchasers to check the record or it should be on the builder to record the waiver of the implied warranty? I don't think we are. And I think if we go down the road of requiring a builder to record the waiver, then we open up a can of worms that is really going to be distasteful and have a lot of unintended consequences. Which are? For example, the current state of the law in Illinois on this, the validity of this waiver, is that it has to be the actual agreement of the parties. By recording the document, all we are doing is creating constructive notice. So if we go down that road, then we're going to erode the high standard that the court and the lower appellate courts have already created for these waivers to be enforceable. In addition, it would not help in this particular situation, because there's no reason why anyone like my clients or any other builder similarly situated would have thought that they needed to record this document. The existence of the rulings in this body of law on the implied warranty of habitability, confirming that it can be waived, combined with basic principles of property and contract law, would not lead anyone to file this document in the land records. And I believe in one of the amicus briefs they mentioned this is not something that is recorded in the industry. One of the topics I wanted to address was the notion that, well, if the subsequent purchaser can simply revive the implied warranty of habitability as a result of the subsequent sale, what does that do to the builder? Well, what it does is it requires the builder to assume an enormous burden and expense of trying to inject itself in every subsequent sale for every house that it ever built and that it has built moving forward. Counselor, your time has expired. Thank you, Your Honor. Thank you, Your Honor. It pleases the court, counsel. My name is Daniel J. Belker, and I'm the attorney here representing John Fattah, who is the appellee in this case. First of all, it's a privilege and honor to be here today and to argue this case before this honorable court. I'd like to basically start off. Were you a scout? My son is an Eagle Scout. He was well-versed, but no, he's not. I just wanted to put you on equal footing. Unfortunately, no, you're not. He's a Boy Scout, or Cub Scout, I guess I should say. But I'd like to start off by focusing, if Your Honors don't mind, on the implied warranty of habitability issue. I'll come back to the other issues shortly. But I think that the court is aware that under its longstanding precedence in Peterson and Roderick, a logical application of the principles that have been announced by this court would require, at least in my opinion, an affirmance of the First District Appellate Court's decision. This court has found, over the last 30 years, that the implied warranty of habitability, in connection with the purchase of a real estate or residence, is a creature of public policy. I think that's incredibly important, because it's something that doesn't depend upon privity of contract. It's something that exists by virtue of the fact that when an individual, a purchaser, a consumer, makes a purchase of a residence in this state, they do so without any knowledge of any latent defects that could be present in the real estate. And again, a latent defect, by definition, is a defect that's either not visible by the naked eye and is not discernible through reasonable due diligence. In this case, the porch, which weighed thousands of pounds, collapsed in the winter, causing $80,000 of damage. Fortunately, no one was on the porch when it collapsed. Had they been, they would have been seriously injured, I suspect. So latent defects have a very broad and important impact on the citizens of the state. And this court has been very strongly in support of that warranty for over 30 or 40 years, almost 40 years. The court has continually expanded the implied warranty of habitability. It's not restricted it. It's expanded the scope. You've found that it exists. It's a creature of public policy. It doesn't depend upon privity of contract. It's an independent claim of right. You have found that it applies to subsequent purchasers. As long as the defect manifests itself within a reasonable period of time after the acquisition of the property by the subsequent purchaser, which in this case occurred. Shortly after Mr. Fattah purchased this property, this porch, which allowed access to the back of his house, collapsed. And the evidence of the trial of this case was overwhelming. In fact, there was no contrary evidence through an expert that this was, in fact, a latent defect. It could not be ascertainable. The issue in this case, which is a first impression, I think both sides agree, is whether or not the waiver between the BIMS and Ms. Lubeck of the implied warranty of habitability extends to the subsequent purchaser. And I suggest to you that's a very easy answer, and the answer is no. Because, again, privity of contract is irrelevant to the analysis. Counsel and his clients argue that the implied warranty never – sorry, I'm going to use his language in his brief as well – that the warranty never attached to the house. Attached to the house. Well, warranties don't attach to the house. They don't exist in any physical form. There's a legal precedent that this court has set that protects consumers, purchasers, from having to bear the burden of the expense of a calamity. This court has determined as a matter of public policy that between the two parties, between the developer, builder, contractor, subcontractor, et cetera, and the consumer or the purchaser, that when a latent defect is identified and causes damage within a reasonable period of time, then the burden has to fall, must fall on the developer-contractor. Between the two, they are in a far better position to prevent the defect from occurring in the first place. So the builder would have to record every waiver? Is that right? Well, that would be one possible way, I suppose, Your Honor, to try to create knowledge in the minds of subsequent purchasers that this warrant had been waived. Counsel suggests that it could be answered simply through a simple question so that the subsequent purchaser goes to the purchaser who's selling the property and says, did you waive the implied warrant of inhabitability? I suggest that's just not tenable. First of all, most laypeople don't know what that is. They're not going to be able to answer the question any better than they can answer the questions about whether there are basement floods or not, and that's a serious issue in this state that has provoked large amounts of litigation. Mr. Volker, on the negotiation for a waiver, or even as-is, did your client receive a reduced amount of money because he purchased it as-is? Isn't that something between the seller and the purchaser, that there's a negotiation going on here? There's nothing in the record on that, Your Honor, so I can't answer the question. But I will address the as-is issue. As-is is a nothing statement. All it means is you're buying the property as-is. Frankly, in Illinois, when you buy real estate, the rule is caveat emptor, which means as-is. It means you're buying what's there, right? And you're not going to get anything else other than what's there. If there's a problem with it, you bought it. Now, a latent defect is different from a leaky roof or tiles coming off in the kitchen or the drywall cracking. These are defects that are construction defects that are hidden beneath the walls and beneath the floor of your home. And consequently, they're not something that can be discernible. But the as-is under your precedent, an as-is waiver is not sufficient to foreclose or to forfeit the implied warranty of habitability because it doesn't mention by name the implied warranty of habitability, which the court has found it has to do. And, two, it doesn't identify as to whom the waiver applies. Mr. Volker, your position would be, though, even if somehow the builder decided the recordation of the waiver with the initial purchaser, your position would still be, wouldn't it, that the subsequent purchaser is not bound by that waiver? Absolutely. Under the court's precedent, I would argue that's the logical... So it's of no consequence if they record it or not. Exactly, because it's not a privity issue. And really, frankly, I don't think it's a knowledge issue either. People can't deprive you of rights that the state has given you, that this court has given consumers, by simply letting you know that in a prior sale the warranty was waived. Well, so what? I didn't waive the warranty, is what the subsequent purchaser is going to say. And therefore, unless and until I waive it, it extends to me. Is your point is that you can't really waive inhabitability? Because even if somebody negotiated for it, you're saying pretty much that it's something that can't be waived. So what's the point of waivers? It can be waived, Your Honor. Mr. Fattah could have waived the implied warranty of inhabitability had he signed a document that says, I hereby waive the implied warranty of inhabitability. And I waive it as against both Ms. Lubeck and the original developer, Mr. Fabilis, also MasterClass. So, yeah, of course, he could have waived it, but he did not waive it. That's uncontested. How does the builder know who the subsequent purchasers are going to be? They wouldn't know. They wouldn't know. And, frankly, again, I don't think there's any under this court's precedent. The developer has applications of an implied warranty to the subsequent purchaser. Does the requirement of the builder know who the subsequent purchaser is? But the waiver would be valid against the original purchaser. Absolutely. It's done correctly, Your Honor. So in that circumstance, what would prevent you're the purchaser and you've waived the warranty, and then something comes up and so you sell the place to your brother-in-law? Then it doesn't apply to him, right? Correct. He's a separate individual, and therefore he'd have rights under this court's precedent. So to follow up on Justice Burke, really it means there is no such thing. Well, there is because your brother-in-law, I think you said brother-in-law. The brother-in-law or your brother could sign a document waiving the implied warranty of inhabitability. He could do that. But I'd be surprised if anybody ever asked you to do that. If they asked you to do that, you'd probably be very concerned, first of all. But why would the purchaser, why would the original purchaser care whether a subsequent purchaser waived the warranty because they're not on the line for it anyway? I would agree with you. I'm not saying it will ever happen. They have no reason to do it. It could happen theoretically, but will it ever happen? You're probably correct. But it could happen under this court's precedent. But I don't think it's going to happen. I think that the issue here really is that construction industry is far better suited to deal with eliminating blatant defense. If the court reverses the First District decision on the merits, essentially it'll send a message, in our view, to the construction industry that it's okay to engage in shoddy construction, shoddy workmanship, and just the industry as a whole, and you can see the industry as a whole is represented here, will simply require, probably in concert to some extent, purchasers to sign a waiver of the implied warranty habitability. Therefore, the effect of your decisions will be meaningless. But then the finality, I mean, of the effectiveness of a waiver is totally eliminated if the sale of the property actually revives the warranty. That's true. That's true. That would be the impact of ferments of the appellate court's decision. And the reason why that's correct, Your Honor, is because, again, it's a creature of public policy. It's not dependent upon privity. It exists independently. But people negotiate waivers in such instances for finality. Well, between the two, yes, between the two. But there's a limitation of what a builder, developer can do. They're doing what they can do by negotiating that original waiver with the original purchaser. But they can't do anything to eliminate their obligation to a subsequent purchaser. There's nothing they can do. Now, we argued in our brief that one thing they could do, if this court accepts it, is they could record the waiver of the implied warranty. And perhaps if this court finds that knowledge is all that's required on the part of the subsequent purchaser, then that, according to your opinion, if you so rule, would invalidate or forfeit the implied warranty. But, again, I don't think knowledge should be the turning point here. And I think when counsel suggests... That puts contract law on its head, too, right? Yes. I mean, if the court determines that, we're basically saying you don't need... I know your argument isn't just privity of contract, but saying you don't need privity of contract. Subsequent purchaser just has knowledge of something that is not part of their contract. I mean, what does that mean? It's meaningless. That's why I believe that the whole knowledge idea, the whole recording idea, counsel suggests that there should be a question by Mr. Cobb, Mr. Vims, did you waive the implied warranty compatibility? Well, who knows what they're going to say? I mean, who knows whether they'll be honest? Who knows whether they even know or remember? So I don't think... I mean, that would just generate more litigation. I think that really we don't need... What we need, I think, is that this court, in our view, continue to protect the implied warranty compatibility as it affects citizens of the state who purchase and make large investments in real estate, investments that are a once-in-a-lifetime, maybe twice-in-a-lifetime investment, and hopefully there'll be very few latent defects arising. But when they do, if they truly constitute latent defects, the burden should rest upon the builder-developer to the extent the plaintiff, the purchaser, can make a claim under the warranty and shouldn't be something that the substantive purchaser is stuck with. Certainly, the construction developer is in a much better financial position, presumably, to handle this on an industry-wide basis than the individual who buys a home and is trying to make their mortgage payments on a monthly basis, not anticipating such a calamity to occur. May I address the two other issues, Your Honor, briefly? Of course. The issue of service. Counsel is correct. There were service irregularities in this case, and we apologize for that. But I will point out that it was a mistake. It was a change of address that was forwarded, and unfortunately it wasn't followed as it should have been. But I will point out that Mr. Bim did get notice of one or more filings in the appellate court long before the briefs were filed, and he did call the appellate court that's conceded by counsel and ask questions about the appeal. He never called me. He never called my client. So I suggest that with the knowledge the appeal was pending, that his due process argument fails. And no motion was made with the First District appellate court asking for any relief of any kind based upon these facts. Second of all, counsel has argued that MasterCled is the proper defendant in this case. Well, I would suggest to your honors that that has been waived. This case was brought against the Bims. The Bims admitted in their original answer that they were the developer builders of the property, and this case proceeded against them individually. MasterCled never intervened, was never a part of the case, and therefore it's too late to make that argument at this late date. At the time the suit was brought, MasterCled was out of business, had no assets. So the case was brought against the Bims. The Bims didn't object to that. And as a consequence, that's how the case was litigated. With or without an attorney, they did have an attorney at one point in time who filed their summary judgment brief, but with or without an attorney, they're bound by the waiver rules that attorneys and litigants are bound by as well. So neither of those points, in our view, are important or relevant or should result in any procedural regularities in this case. We would ask that Your Honors affirm the decision of the First District Appellate Court on the grounds stated therein. Any questions? I have one follow-up question, I believe, to Justice Burke's questions about as-if. As-is, excuse me. You indicated the as-is would not affect latent defects, if I understood you correctly. Is that what you're saying? That is true, Your Honor, because the as-is has no impact on the implied warrant compatibility. Okay. Your decisions require the use of those words exactly in order to waive that warranty. So as-is is not a substitute, Your Honor. And you are also arguing that as-is is not an acceptance of the LUBEX, the first purchaser's waiver of the implied warranty. Absolutely, Your Honor. We are arguing it's not an acceptance of Ms. LUBEX's waiver. And why is that? Because my clients didn't have any knowledge of the waiver, number one. Number two, the only way for this Court's decisions to have waived the implied warranty compatibility is to assign something personally that says you waived the implied warranty compatibility. In this case, it didn't happen. All that happened was an as-is. Frankly, every house has sold as-is. Every used car has sold as-is. It doesn't mean that the engine can blow up tomorrow and the dealer can walk away scot-free. Thank you very much, Your Honor. Thank you. May I proceed? You may. Counsel, just before you get started here, I presume in hearing your initial argument, there's a portion of it that says, well, what is the builder actually getting if a subsequent purchaser, if there's a waiver and the subsequent purchaser then can invoke the implied warranty? But he is getting something, isn't he? I mean, if that initial purchaser never sells the house, there's a waiver. And I think we haven't focused enough on, for a reasonable period of time, if that purchaser keeps the house, I don't know, I'll throw out a number, 20 years, 15 years, 10 years, 5 years, whatever would constitute as not being a reasonable period of time, that builder is getting something in that context too, right? Because he doesn't know. I mean, he doesn't know how long. We give the examples where a year later or six months later or two days later it's sold and he's not really getting the benefit of his bargain because he gave that initial purchaser something in exchange for the waiver. But there's a chance he is going to get something as a result of that, right? I think that the builder, using both common sense and the established principles of property and contract law, would expect that when he's getting the waiver, he's getting a waiver. That gives him some certainty so that he can move on with his business and build more houses and sell more houses and continue on and on and on. What's happening and what I heard in counsel's argument is that, well, he might get a waiver as to the first house, but it can be eliminated the very next day if a husband and wife buys a house and the husband buys it in his name and immediately transfers it to the wife. It renders the exchange essentially illusory. And that's exactly what the appellate court did in this case. It ignored the fact that Ms. Lubeck received an express written warranty. The language is very, very clear that she got that in exchange for waiver of the implied warranty. And a point that we made in the briefing is that Mr. Fattah has received the benefit now of if he's allowed to proceed and the appellate court's ruling is not reversed, he's getting the benefit of both sides of that bargain. He's getting the benefit of MasterCloud having performed under the express written warranty by going in and doing whatever warranty work it did. The record supports the fact that some warranty work was done. And now he's getting the benefit of the other side of the bargain in being able to enforce the implied warranty compatibility. And I would submit to the court that there's a basic level of fairness that needs to be examined here. Builders need some degree of certainty in the marketplace that when they get these waivers, when they sign documents with people to sell houses, that they're not signing up for continuous, lifelong liability. And there's one of the cases in this body of law. Yeah, it really is. I understand the policy argument, but you've heard the policy argument on the other side, right? Including the fact that the builder who, if the facts prove out in each individual case, had a defective product in one aspect or another and having to absorb a loss there or purchase her five, six years down the line, now having to go in and spend thousands of dollars or whatever it is as a result of the builder's defective work. So there's a policy argument on the other side as well, isn't there? There's an argument, but I would point to two flaws in that argument. One is that as the amicus parties in this case have demonstrated, there's a real downside to not reversing the appellate court's decision in this case. And it is that now suddenly builders are going to have to price in this extended risk that did not exist before. That is going to, in turn, increase the price of every new home constructed in Illinois, and it's going to price, I believe, the National Association of Home Builders' figure was that for every $1,000 increase in home construction costs, it's going to price 8,500 Illinoisans out of home ownership. That's a real problem. And so if we're balancing, in addition, the second point is that... ...are there waivers of the implied warranty of having a building? What the amicus parties tell us is that this is very common. This occurs in the industry. I would have to point directly to their brief for the exact answer to that question. But the second point is that at some level, a purchaser of a house needs to do some level of due diligence. They already do some. All I'm suggesting is that they can simply ask, was the warranty waived? If they're told the incorrect answer, if they're told the correct answer, then they're fully informed. If they're told the incorrect answer, then they would have a remedy under existing law against the person that either lied to them or misrepresented what was going on, either a fraudulent misrepresentation claim or a negligent misrepresentation claim. I think it was Mr. Velker's argument that knowledge wouldn't make any difference, that the implied warranty of habitability cannot be waived as to a subsequent purchase or a knowledge recordation would not matter. Would you respond to that? I believe what you said was his argument is that it can never be waived as to a subsequent purchase. That's really my understanding, yes. Right. In response to that argument, I would suggest, well, first of all, he cannot buy from Ms. Lubeck or any initial purchaser what that initial purchaser never owned. She never owned a right to proceed against the BIMS or MasterClad or any builder for breach of the implied warranty of habitability. She gave that away. We cited several cases in our briefing demonstrating that across contract law and across property law, that's the case. You can't transfer it to someone else, something that you never owned. I would, again, point out that my time is short, but the court has already once ruled that a builder cannot be a lifetime guarantor of construction. That's the Von Holt case. And I would also thank Your Honor for pointing out that if we are, if the court rules that the subsequent purchaser can, the warranty waiver is not effective as to the subsequent purchaser, then the warranty disclaimers that the builders think that they are getting are essentially worthless. And I would direct the court to the amicus briefs, and there's a particular section in our brief that discussed all the ramifications of that. With that, if the court has any additional questions, I'm happy to answer them. But that will conclude my remarks. Thank you. Thank you. Case number 119365, Jon Fata v. Merrick Bim et al., will be taken under advisement as agenda number 8. Mr. Dorey and Mr. Wilker, thank you for your arguments this morning. And thank you for giving the boys some material for their next Merrick badge. Thank you very much. You're excused at this time.